**UNITED STATES of America**

v.

**Carlton E. BRYANT, Appellant.**

**UNITED STATES of America**

v.

**William E. TURNER, Appellant.**

**Nos. 23957, 24105.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 26, 1970.

Decided July 28, 1971.

Petition for Rehearing Denied Sept. 24, 1971.

Mr. Nicholas A. Addams, Washington, D. C., was on the pleadings for appellant in No. 23,957.

Mr. David Applestein, Washington, D.C. (appointed by this court), was on the pleadings for appellant in No. 24,105.

Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry and Brian W. Shaughnessy, Asst. U. S. Attys., were on the pleadings for appellee.

Before WRIGHT and McGOWAN, Circuit Judges, and JOHNSON,* Chief Judge, United States District Court for the Middle District of Alabama.

PER CURIAM:

These cases are back in this court following a remand proceeding ordered in United States v. Bryant, 142 U.S.App. D.C. 132, 439 F.2d 642 (1971). The proceeding concerned the circumstances under which a tape recording of a narcotics transaction was "lost" by an agent of the Bureau of Narcotics and Dangerous Drugs. In *Bryant, supra,* we held that the tape was discoverable under the Jencks Act, Rule 16 of the Federal Rules of Criminal Procedure, and the due process clause of the Constitution. We announced that, in the future, federal investigatory agencies must promulgate and rigorously enforce rules designed to preserve all discoverable evidence and that nonpreservation caused by failure to follow the rules, whether in bad faith or mere negligence, will result in imposition of full sanctions. In the instant cases, however, we directed the District Court to "weigh the degree of negligence or bad faith involved, the importance of the evidence lost, and the evidence of guilt adduced at trial in order to come to a determination that will serve the ends of justice." The District Court did so and decided that appellants' convictions of serious narcotics violations must stand.

In remanding these cases, we stated that "[f]urther inquiry into the regular procedures, if any, followed by the Bureau of Narcotics and Dangerous Drugs at the time [of the surveillance in question] would * * * be relevant; if it appears that in fact Agent Warden was simply following regular Bureau practice—inadequate though it was— the degree of negligence might be somewhat reduced." Such an inquiry was conducted in the District Court. It developed that the Bureau did indeed have established practices governing preserva-

* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1964).

tion of tape recordings at the time of the surveillance. In fact, the practices were embodied in specific rules issued by the Director of the Bureau. They provided in pertinent part:

> "Where technically feasible whenever electronic or mechanical devices are used, an effort should be made to record the conversation by tape recording. These tapes should be preserved for ten years in the same manner as documentary evidence."

The agent in these cases complied with the first sentence of the rule, recording the conversations which he was surveilling. However, he did not comply with the second and more important sentence. As the remand proceeding made very clear, the agent made no effort whatever to preserve the tape recording under the customary procedures. The fact that he acted in direct violation of a Bureau rule makes his conduct extremely negligent and, in the future, would surely result in imposition of full sanctions.[1]

 Nevertheless, after a thorough review of the records made both at trial and at the remand proceeding we conclude that appellants' convictions need not be set aside. Although the degree of negligence shown is regrettably great, it is outweighed by other factors.[2] The lost tape here had major potential importance to the question of guilt or innocence, since it might have enabled appellants to contradict the testimony of the undercover agent involved in the narcotics transaction. It developed on remand, however, that the Bureau agents had played the tape and found it to be almost entirely unintelligible. The District Court credited the agents' testimony in this regard and concluded that the tape would have been of little use to appellants. There is nothing in the record which could justify our rejection of that conclusion. In the future, of course, investigative agencies will not be allowed to excuse nonpreservation of evidence by claiming that it contained nothing of interest to defendants. But, under the more pragmatic balancing approach which we have adopted for these cases, the unintelligibility of the tapes—when combined with the very strong evidence of guilt adduced at trial—outweighs the negligence involved in the loss of the tape.

Appellants' convictions are, therefore, Affirmed.

---

1. The agent's failure to obey the Bureau's rule cannot be excused by some exception he may have read into the rule. It cannot be excused by the fact that his stated purpose in recording the conversations was to protect the undercover agent rather than to collect evidence. Nor can it be excused by the fact that the tape was almost completely unintelligible. The rule made no such exceptions, and it is not the role of an agent to create them. Moreover, if the Bureau's rule had allowed nonpreservation of tapes made for protective purposes or tapes judged by an agent to be unintelligible, it would have violated the principles we set forth in United States v. Bryant, 142 U.S.App. D.C. 132, 439 F.2d 642 (1971). We held that *all* discoverable evidence must be preserved; and tapes are no less discoverable because they were made for protective purposes or because they are of poor quality. It is the defendant's right to discover such evidence and decide for himself its usefulness.

We note that on February 19, 1971—less than a month after we issued our first opinion in these cases—the Bureau of Narcotics and Dangerous Drugs clarified its rules specifically to provide that unintelligible tapes as well as intelligible tapes must be preserved "in the same manner as documentary evidence."

2. The District Court, in its findings of fact and conclusions of law, seemed to assume that only showings of bad faith by the Government were relevant on remand. However, we made very clear in our original opinion remanding the cases that negligent failure to preserve discoverable evidence was highly relevant on remand and would result in imposition of full sanctions in the future.