UNITED STATES of America

v.

Joseph A. BUNDY, Appellant.

No. 24803.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 28, 1972.

Decided June 30, 1972.

Mr. Edward L. Genn, Washington, D. C. (appointed by this court), for appellant.

Mr. Robert S. Tignor, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and John A. Terry and David C. Woll, Asst. U. S. Attys. were on the brief, for appellee. Mr. Harold H. Titus, Jr., U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

PER CURIAM:

On October 24, 1969, Joseph Calan was robbed of 20 one-dollar bills and some small change at gunpoint. He immediately called the police and was interrogated at the scene of the crime by an Officer Brown. Brown immediately relayed a description of the robber over the police radio as "Negro male, eighteen years, * * * wearing a black raincoat and medium green pants."

Within a few minutes, patrol officers Borden and Hall received the broadcast and observed appellant, who was wearing a black raincoat and green pants, stoop behind a parked car when he spotted the police. The officers called him over and recovered 20 one-dollar bills between the curb and the tire of the parked car. After a thorough search of the area, no gun was found. The victim of the robbery, Mr. Calan, identified appellant in a lineup several days later. Appellant was tried and convicted of armed robbery and assault with a dangerous weapon.

[1] The only issue of substance in this appeal is appellant's claim that the notes taken by Officer Brown during his interrogation of Calan should have been produced under the Jencks Act, 18 U.S. C. § 3500 (1970), and under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The initial description of an assailant by the victim or other eye witness is crucial evidence, and the notes taken of that description should be kept and produced.[1] The formal written police report of the crime does, of course, contain a description of the offender, but that report is often prepared after a suspect is arrested and the danger that the description in the formal report may be subconsciously influenced by the viewing of the suspect by the author of the report is very great. Thus, unless the trial judge is able to see the original notes, it may be difficult, if not impossible, to determine whether or not they should be made available to the defendant under Brady or the Jencks Act.

Here, however, the failure to produce the original notes was harmless beyond a reasonable doubt.[2] Appellant was arrested on the basis of the police radio "lookout" broadcast immediately after the offense and he was picked up within minutes of the offense with the stolen money. We will not countenance avoidance of our rule that original notes be preserved unless the harmlessness is as self-evident as it is in this case. Otherwise, the prophylactic purpose of our rule is frustrated.[3]

Affirmed.

1. United States v. Bryant, 142 U.S.App. D.C. 132, 439 F.2d 642 (1971).

2. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

3. We are pleased to note that pursuant to the opinion of this court in United States v. Bryant, *supra* note 1, the Metropolitan Police of the District of Columbia, on May 26, 1972, issued General Order Series 601, No. 2. That general order reads in pertinent part:
      Recent court decisions establish for Government investigative agencies, in-cluding this department, a duty to preserve all material which constitutes, or might constitute, evidence, or might otherwise be pertinent in a subsequent criminal judicial proceeding. The purpose of this order is to establish guidelines for the preservation of all such evidence, not presently required to be preserved pursuant to existing departmental orders, which may be required to be produced in such a proceeding. This order consists of the following parts: PART I Responsibilities and Procedures for Members of the Department

LEVENTHAL, Circuit Judge, concurring:

I concur in the affirmance of appellant's conviction. However, I think it appropriate to add my thoughts concerning a police officer's obligation to keep his rough notes of what he hears on the street from eyewitnesses.

## A.

Appellant protests the trial judge's denial of the defense motion to strike the testimony of Mr. Calan, the victim who identified him, on the ground that the Jencks Act, 18 U.S.C. § 3500(e) (2), required production of the notes taken by Officer Brown. The majority holds, correctly, that any error committed in denying the motion was harmless. Officer Brown, who subsequently left the D. C. police force, was unavailable at trial. The prosecutor was apparently not aware of the existence of any notes until Mr. Calan testified at trial that he recalled seeing Officer Brown writing as he spoke.

Theoretically the notes might have permitted the defense to undercut Calan's lineup and in-court identification of appellant by showing appellant's actual appearance differed from Calan's initial description to Officer Brown, as indicated by the notes. But immediately after talking to Calan, Officer Brown put a description of appellant out over the police radio that was transcribed and is available. The broadcast description matched appellant in person, and indeed resulted in his arrest within minutes.

## B.

I now turn to the majority's declaration that an eyewitness's initial description of the offender is crucial evidence, that the policeman's notes of this description must be available in order to determine whether their production is required under the Jencks Act, 18 U.S.C. § 3500 (1970) and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that the Court "will not countenance avoidance of [its prophylactic] rule that original notes be preserved unless the harmlessness is as self-evident as it is in this case."

1. The problem of unavailability of an investigator's "rough notes" is a recurring one. In the past it has been the practice of some law enforcement agencies, notably the FBI, to destroy notes

PART II Responsibilities and Procedures for Supervisory and Command Personnel
PART I
A. *General.*
In addition to materials which are required to be preserved pursuant to existing departmental orders, such as fingerprints preserved by the Identification Branch, or items which are required to be turned over to the Property Clerk and listed on the property book, members of the department shall preserve all potentially discoverable material, including any such material which might prove favorable to an accused.
B. *Definitions.*
Potentially discoverable material includes, but is not necessarily limited to, such items as tangible documents, reports, tapes, transcripts of tapes, and photographs. The following are examples:

\*      \*      \*      \*      \*
3. Any notes taken by a member of the department which are a substantially verbatim recital of an oral statement made by a prospective witness or defendant which are recorded contemporaneously with the making of the oral statement;
\*      \*      \*      \*      \*
6. All other materials which reasonably may be expected to be relevant in a criminal judicial proceeding. Any doubt as to whether a particular item may be relevant and therefore preservable shall be resolved in favor of preservation pursuant to the terms of this order.
It appears to the court that the "[a]ll other materials" provision in Part I B 6 is intended to include police rough notes of the description of the assailant as given by the victim prior to the arrest of the suspect.

taken during an interview as a matter of administrative routine once a formal report based on the notes has been prepared. That practice has been condemned as "ill-advised" because it impedes impeachment of the report itself, United States v. Missler, 414 F.2d 1293 (4th Cir. 1969), cert. denied, 397 U.S. 913, 90 S.Ct. 912, 25 L.Ed.2d 93 (1970); United States v. Johnson, 337 F.2d 180 (4th Cir. 1964), aff'd 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966).

I join in that condemnation, but do not believe this case is the appropriate vehicle for consideration of an across-the-board rule that it is automatically "error"—though possibly the error may be "harmless"—to receive a witness's testimony if the original notes were destroyed in the course of preparing another report, cf. Killian v. United States, 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961). See also United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969).

In affirming this conviction, it is our premise that when rough notes are taken in a fast-moving street situation and incorporated into a simultaneous radio lookout, or maybe an officer's report (PD 251) filed promptly, there is indication of the reliability of the reporting process. The record does not focus on the possibility that there may be administrative reasons justifying or excusing lack of preservation of rough notes, at least in some situations, or in particular circumstances.

My own inclination is to think that in general administrative considerations are not likely to be substantial enough to outweigh the interest of justice that would be furthered by requiring preservation of rough notes. In that spirit, I join the majority's approving reference to the recently promulgated police regulation establishing a departmental policy of preservation of all potentially discoverable material.

I should like to add, however, that this case does not require consideration of the appropriate sanction in the event that the majority's rule of preservation is violated in a particular case. One alternative, of course, would be a "prophylactic" Jencks-type sanction of exclusion of testimony. That might be appropriate, for example, if there appeared to have been some official misbehavior in failing to preserve the notes, or if other circumstances showed a strong likelihood that the notes would have undercut the witness's in-court testimony. I am not clear whether that can or should be an invariable sanction. In some circumstances, and particularly in the face of a general routine of preservation, such as the D.C. police have established, the absence of notes may be the kind of mishap best handled by instructing the jury with an adaptation of the kind of instruction used in case of a missing witness, that the jury is free to infer that the missing original notes would have been different from the testimony at trial and would have been helpful to defendant. The need for such an intermediate approach may be heightened if a situation arises when the court cannot call on its supervisory power to exclude testimony, see 18 U.S.C. § 3502 (identification testimony by an eyewitness).

The trial judges will surely be interested in maximum reasonable "rough note" preservation, and will be in a better position to determine what the circumstances of a particular case requires.