Maurice W. HARDY, Appellant,

v.

UNITED STATES, Appellee.

No. 7419.

District of Columbia Court of Appeals.

Argued Jan. 16, 1974.

Decided March 20, 1974.

Michael J. McCarthy, appointed by this court, for appellant.

Albert H. Turkus, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, and John A. Terry and Peter O. Mueller, Asst. U. S. Attys., were on the brief, for appellee.

Before GALLAGHER, YEAGLEY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant was charged with carrying a pistol without a license in violation of D.C. Code 1973, § 22–3204. His motion to suppress the gun was denied, following which a jury found him guilty as charged. It is argued that the conviction should be set aside because the motions judge (1) improperly refused to strike the testimony of the arresting officer, and (2) erroneously denied the motion to suppress. We affirm.

Rufus Ward was assaulted at about 3:45 a. m. one morning in the vicinity of Florida Avenue and Q Street, N.W. His attacker came upon him from behind, struck him on the head, and forced him at gunpoint into a nearby yard. The assailant took Ward's money and left.

Ward was bleeding profusely from his head wound. He asked someone to call the police, and went to a nearby service station to clean himself up. At the service station, he again was accosted by the same individual. His erstwhile attacker said, "I'll do . . . karate with you", and danced around Ward for "a good little while" under the lights in front of the service station. Finally the assailant walked away.

Two police officers then arrived at the station. They observed that Ward had a fresh cut over his eye and appeared to have been assaulted. Ward told the police about the incident. He said that his assailant was armed and had gone east on Florida Avenue. Ward got in the police car with the officers. They drove east on Florida Avenue to North Capitol Street,

where they turned south. They had proceeded about a block when Ward pointed at appellant and said, "There he is; that's the guy."

Officer Phil Clarke alighted from the scout car and approached appellant. Appellant moved his hand toward a pocket, whereupon Officer Clarke drew his gun and told Hardy to "hold it right there." The officer frisked him and found the pistol in his coat pocket.

Appellant argues that the search violated his Fourth Amendment rights. He contends that when he was approached and frisked, there was neither probable cause for arrest nor did Officer Clarke have the articulable suspicions required for a protective frisk. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In considering an appeal from a judgment of conviction, we are obliged to view the evidence in the light most favorable to the government. _E.g.,_ Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, cert. denied, 331 U.S. 837, 67 S. Ct. 1511, 91 L.Ed. 1850 (1947). The facts known to Officer Clarke, including his observation of the victim and Ward's spontaneous positive identification of appellant, unquestionably gave him probable cause to arrest. Brown v. United States, D.C.App., 274 A.2d 683 (1971); Pendergrast v. United States, 135 U.S.App.D.C. 20, 27, 416 F.2d 776, 783, cert. denied, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969). The search which uncovered the pistol was valid as incident to the arrest.[1] _E.g.,_ United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

Appellant's second argument is premised on the so-called Jencks Act, 18 U.S.C. § 3500 (1970). Before resolving the question presented, it is appropriate to explain a rather unusual feature of the government's evidence. Ward, the complaining witness, was absolutely certain that the man who assaulted him, the man who danced around him karate-style, and the man whom he pointed out to Officer Clarke were one and the same. However, he later was unable to identify appellant as that man. The government dropped an assault charge, and prosecuted appellant solely on the gun charge. Ward's testimony established probable cause for the arrest, but it was Officer Clarke's positive identification of appellant as the man on whom he found the gun that led to the conviction.

Officer Clarke was cross-examined during the hearing on the motion to suppress. It then was learned that Ward had described his assailant at the service station, and that Clarke had jotted down that description. The court explored the availability of the officer's note, but it could not be found.[2] The court declined to strike the testimony of Officer Clarke; appellant argues that ruling was erroneous.

The general purpose of the Jencks Act is to aid the search for truth by providing a defendant with access to prior statements of government witnesses for possible impeachment purposes. _See_ United States v. Perry, 153 U.S.App.D.C. 89, 94, 471 F.2d 1057, 1062 (1972). If the government elects not to produce a statement in its possession, the statute provides for elimination of the witness' testimony. 18 U.S.C. § 3500(d) (1970). Clearly, however, the Act imposes its sanction on the

---

1. Even if we were to assume that Officer Clarke did not have probable cause to arrest appellant when he approached him, the seizure of the pistol nonetheless would have been lawful. When Ward identified Hardy as his assailant, the officer had a duty to investigate. While approaching appellant, the officer saw him start to reach in his pocket. Since he had been told that the attacker was armed, Officer Clarke was justified in conducting a protective frisk of appellant's outer clothing. Terry v. Ohio, _supra._ The gun was discovered in the course of such a frisk.

2. Defense counsel did not request production of the note until after his motion to suppress had been denied, some time after Officer Clarke had testified. Although the trial court expressed doubt as to the timeliness of the request, a full inquiry was made into the whereabouts of the note. We express no opinion on the timeliness question.

testimony of the witness who gave the statement, rather than on the one who received it. The argument that Officer Clarke's testimony should have been stricken thus was and is misdirected. The Jencks Act permitted appellant to challenge only the testimony of Ward. *Cf.* Savage v. United States, D.C.App., 313 A.2d 880 (1974); United States v. Bundy, 153 U.S. App.D.C. 191, 193, 472 F.2d 1266, 1268 (1972) (concurring opinion).

■ That leads us to consider whether the receipt of Ward's testimony constituted plain error in light of Officer Clarke's inability to produce the paper on which he noted Ward's original description of his assailant.[3] Where a discoverable statement has been lost or destroyed and hence is not in the government's possession, a trial court must weigh certain factors in exercising its discretion whether to strike a witness' testimony. *E.g.,* United States v. Augenblick, 393 U.S. 348, 89 S. Ct. 528, 21 L.Ed.2d 537 (1969); United States v. Bundy, *supra;* United States v. Bryant, 142 U.S.App.D.C. 132, 439 F.2d 642 (1971). As stated in *Perry, supra* (153 U.S.App.D.C. at 99, 471 F.2d at 1067):

> [U]nless either in the instant or subsequent cases the interest of justice will be furthered by penalizing the Government, then [the penalty of striking the testimony of a witness] is not to be invoked automatically as in an adversary game. In order to exclude testimony, there should be a showing of either negligence or purposeful destruction accompanied by either bad motive or bad judgment.

*Perry* also directed the trial court to consider possible prejudice to the defendant in determining whether to impose a sanction upon the government for the loss of a witness' statement. *See also* Banks v. United States, D.C.App., 305 A.2d 256 (1973). In the case before us, the officer testified that his arrest of appellant was based on the victim's on-the-scene identification, and not on the prior description which he had been given. That identification supplied the officer with an independent basis for appellant's arrest, and effectively reduced any possible prejudice from the loss of the notes to a nullity. Savage v. United States, *supra;* Banks v. United States, *supra.*

In United States v. Bryant, *supra,* the Circuit Court sought to direct law enforcement instrumentalities in the District of Columbia to promulgate and follow "rigorous and systematic procedures designed to preserve *all* discoverable evidence gathered in the course of a criminal investigation." *Id.,* 142 U.S.App.D.C. at 142, 439 F.2d at 652 (footnote omitted). In apparent response to that opinion, the Chief of the Metropolitan Police Department issued General Order Series 601, No. 2, which became effective May 26, 1972. It directed police officers thenceforth to preserve all potentially discoverable material.[4]

■ That General Order was in effect when Ward was attacked. The note which Officer Clarke made of Ward's description of his assailant was at least potentially discoverable, and Clarke's failure to preserve that note violated the order. However, the officer's conduct did not constitute negligence necessitating the imposition of any sanction at the appellate level, particularly since the description given by Ward was never utilized by the police for any pur-

---

3. It is unknown whether the officer's notes reached the level of constituting a "statement" which properly was discoverable under the Jencks Act. If they did not, their production could not properly be ordered. *See* United States v. Hines, 147 U.S.App.D.C. 249, 264, 455 F.2d 1317, 1332 (1972).

4. *Among* the General Order's definitions of "potentially discoverable material" is the following:

3. Any notes taken by a member of the department which are a substantially verbatim recital of an oral statement made by a prospective witness or defendant which are recorded contemporaneously with the making of the oral statement (this includes an officer's rough notes of the description of the perpetrator of a crime given by the victim or witness prior to the arrest of a suspect.);

pose at all. No effort was made below to have Ward's testimony stricken, and no proper basis existed for challenging Officer Clarke's testimony. We are satisfied that any possible error was harmless. The judgment of the trial court accordingly is affirmed.

GALLAGHER, Associate Judge (concurring):

This is still another instance where, as noted in the court's opinion in this case, there apparently has not been compliance with Metropolitan Police General Order Series 601, No. 2. *See, e.g.,* Savage v. United States, D.C.App., 313 A.2d 880 (1974); Banks v. United States, D.C.App., 305 A.2d 256 (1973).

As stated in Banks v. United States, *supra* at 259 (Gallagher, J., concurring) the government gave us to understand that potentially discoverable material would be preserved in view of the terms of the General Order. That was more than a year ago. I would assume the government is taking steps to effectuate general compliance.