Donald M. FIELDS, Appellant,

v.

UNITED STATES, Appellee.

No. 8769.

District of Columbia Court of Appeals.

Argued Nov. 12, 1975.

Decided Jan. 3, 1977.

Rehearing and Rehearing En Banc Denied April 8, 1977.

Louis Seidman, Public Defender Service, Washington, D. C., for appellant.

Hamilton P. Fox, III, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Asst. U. S. Atty., Washington, D. C., and Peter K. Mair, Asst. U. S. Atty., Seattle, Wash., were on the brief, for appellee.

Before NEBEKER, YEAGLEY and MACK, Associate Judges.

Opinion for the court by Associate Judge NEBEKER.

Concurring opinion by Associate Judge YEAGLEY at p. 543.

Dissenting opinion by Associate Judge MACK at p. 544.

NEBEKER, Associate Judge:

This appeal arises from a judgment of the Superior Court after a jury trial finding defendant-appellant, Donald M. Fields, guilty of first-degree burglary while armed (D.C.Code 1973, §§ 22–1801(a), –3202), and armed robbery (D.C.Code 1973, §§ 22–2901, –3202). We must decide whether under the Jencks Act (18 U.S.C. § 3500) the victim may not testify, as to identification, where a police officer's handwritten notes made at a post-arrest, on-scene identification confrontation (showup) were negligently lost. Testimony as to the showup was precluded, but otherwise the victim testified fully. We affirm.

A restaurant owner was robbed at gunpoint of half the evening's receipts (approximately $1,000, one-half being in $20 bills) that he had taken to his home. During the episode, the victim was required to lie on the floor while one of the robbers stood near his face. That man wore unique shoes like the ones worn by Fields at the time of his arrest shortly thereafter

(the shoes were two-toned brown with a dent in one of the toes). The family of the victim was also terrorized. The victim immediately reported the crime to the police and described the clothing, including a bandanna used as a mask, and the physical appearance of the assailants. A few minutes later the police brought Fields before the victim, Fields matching the description previously given. Fields had been arrested a short distance away as he stood beside his car that had run out of fuel. The victim recognized on Fields the unique shoes worn by one of his assailants. He also recognized Fields' other clothing, hair, and physique. An amount of money in $20 bills equalling about one-half of the stolen receipts was seized from Fields' person. The red bandanna that had been described by the victim, and included in the broadcast as part of the description, was seen in Fields' automobile and seized.[1]

A number of policemen present at the showup took rough notes. One officer later left the police force; his notes were lost. Other notes taken at the showup and other statements were produced at trial. The victim later identified Fields at a lineup. Over objection, the trial court permitted testimony to be given as to the lineup identification as well as an in-court identification. It excluded testimony as to the showup.

Fields contends that the Jencks Act required the trial court to strike all of the complaining witness' identification testimony since the one officer's showup notes could not be produced by the government. He also contends that the trial court erred in admitting testimony as to his lineup and

in-court identifications on the theory—which he argues has no place in the so-called Jencks issue—that an independent source or capacity for identification existed. We cannot agree.

The independent source exception to the exclusion of untrustworthy or overly suggestive identification testimony is based on the thesis that if it is otherwise shown to be credible, and subject to cross-examination, it is not scarred by improper state-sponsored identification procedures. The identification should thus be admitted in the quest for truth. *United States v. Wade,* 388 U.S. 218, 239–42, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The basis for the trial court's holding here appears to be the victim's highly credible ability, from the crime encounter, to identify Fields' hairline and physique in addition to the bandana and the highly significant unique shoes. There was testimony by the arresting officer that Fields was wearing those shoes a few minutes after the robbery, and, as observed, the bandana was found in the automobile where he was arrested.

We hold that the trial judge was eminently correct in looking to an independent, credible identification capacity before forbidding all identification testimony. As we have said, the Jencks Act was intended to aid in the search for truth by permitting access to prior statements of government witnesses for possible impeachment. *Hardy v. United States,* D.C.App., 316 A.2d 867, 869 (1974), *citing United States v. Perry,* 153 U.S.App.D.C. 89, 94, 471 F.2d 1057, 1062 (1972). If Fields were correct that elimination of all the victim's identification testimony was the only course open to

1. Fields' counsel is unduly harsh with the record in his effort to minimize the strength of the evidence. He indirectly chastises the prosecution for not calling the victim's wife and two children to testify when he observes that the government "chose" not to call them. The victim was the only one who had a meaningful opportunity to see Fields. The other intruders, who were not caught, went upstairs and terrorized the wife and the two children. The wife was unable to identify

Fields. The same was true for the 9-year-old daughter and the 4-year-old son. The son was crying and vomiting in Fields' presence because his life had been threatened and because he was tied up. However, the victim was face-to-face with appellant for about ten minutes while they were downstairs. The lighting was good and they engaged in considerable conversation throughout the incident.

the trial judge, notwithstanding reliable independent identification which is subject to cross-examination, the search for truth would be defeated by the happenstance of a subsequent loss of the officer's notes. If a witness can make an identification (in court or at a lineup) from an ability acquired otherwise than from a state-sponsored proceeding about which testimony may not be received, neither the policies underlying the constitutional rule of exclusion nor the Jencks Act requires that that identification be barred. When an independent reliable capacity for identification exists, the automatic sanction of striking all such testimony would irrationally defeat the search for truth, for it is possible, in any event, to cross-examine the witness on that independent capacity.[2] In short, there is no rational basis to impose a Jencks Act sanction in this instance.

The Jencks Act was passed by Congress in 1957 in response to the Supreme Court's decision in *Jencks v. United States*, 353 U. S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). A major concern of Congress was to limit and to regulate defense access to government papers. *Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L. Ed.2d 1287 (1959). After a government witness has testified on direct examination, the court on the defendant's motion shall order the government to produce any statement of the witness in the government's possession relating to the witness' testimony. "The purpose of the Jencks Act was to provide the defense with a means of impeaching a government witness by means of a prior inconsistent statement . . . while not allowing an unrestrained search through government files." *United States*

---

**2.** Our dissenting colleague reads the record to indicate that the trial judge found that no independent source existed for the lineup identification. We therefore set forth what was said at the ultimate ruling:

THE COURT: . . . Now Mr. Bruzzo has indicated in his cross-examination about the fact that he had seen the defendant's face, was a part of the basis of his identity at the lineup. While he refers to other physical characteristics of the defendant as being part of that, nevertheless it appears to the Court that the fact that he has seen the defendant, has seen the defendant's face prior to the lineup, it occurs to the Court that it would be very difficult to determine having seen the defendant's face that that would not form a strong basis for the identity in the lineup, and I believe I would have to rule out the evidence of the lineup procedure on that basis.

[THE PROSECUTOR]: Your Honor, is that a ruling of taint?

THE COURT: Yes, I think it is tainted by virtue of having seen the defendant in the confrontation.

[THE PROSECUTOR]: My argument is this, that you have ruled that the confrontation procedures were lawful, they were not violative of the Constitution or anything else, that that is a lawful confrontation under the case law.

THE COURT: Yes.

[THE PROSECUTOR]: And I can't see how a subsequent identification based

on a lawful confrontation can be tainted.

Jencks is a very particular statute dealing with a very particular area and it is not a statute which brings into play the legality of the confrontation.

If the confrontation is illegal then I couldn't have an officer describe it.

But I don't understand the ruling.

THE COURT: Yes, I will reverse myself. You are right. I have to agree with you.

I cannot rule out the lineup procedure on the basis of taint, so I reverse that ruling.

[THE PROSECUTOR]: Is Your Honor making a finding of independent source for an in-court identification based on the characteristics that Mr. Bruzzo described, that he saw during the commission of the robbery?

THE COURT: Yes. I am making a finding that there is an independent source based on the characteristics which Mr. Bruzzo saw during the robbery.

It is the Court's opinion that as far as the defendant is concerned, those are matters to be challenged on cross-examination. Having reconsidered the tentative ruling on "taint" as to the lineup identification, it seems inescapable that the final ruling was that both identifications were admissible on the independent basis that the victim saw Fields' "characteristics . . . during the commission of the robbery." It is that ruling with which we find no error.

*v. Catalano,* 491 F.2d 268, 274 (2d Cir. 1974).

■ The Jencks Act does not mention the negligent loss of a statement; it only contemplates a situation where the government elects not to produce a statement that it has in its possession. The government's need to make this election in some cases may be dictated by considerations of national security or the safety of covert law enforcement operatives. However, the inability to produce a statement not in the government's possession because of an inadvertent as distinguished from a deliberate destruction is not an election against production. *United States v. Perry, supra* at 95–96, 471 F.2d at 1063–64; *cf. United States v. Carpenter,* 166 U.S.App.D.C. 358, 510 F.2d 738 (1975). In *Hardy v. United States,* D.C.App., 316 A.2d 867, 870 (1974), this court said:

> Where a discoverable statement has been lost or destroyed and hence is not in the government's possession, a trial court must weigh certain factors in exercising its discretion whether to strike a witness' testimony. *E. g., United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969); *United States v. Bundy,* [153 U.S.App.D.C. 191, 472 F.2d 1266 (1972)]; *United States v. Bryant,* 142 U.S.App.D.C. 132, 439 F.2d 642 (1971). As stated in [*United States v.*] *Perry, supra* (153 U.S.App.D.C. at 99, 471 F.2d at 1067):

> [U]nless either in the instant or subsequent cases the interest of justice will be furthered by penalizing the Government, then [the penalty of striking the testimony of a witness] is not to be invoked automatically as in an adversary game. In

order to exclude testimony, there should be a showing of either negligence or purposeful destruction accompanied by either bad motive or bad judgment.

A remedy, on the assumption that one was needed, for the negligent loss of a Jencks Act statement was designed in *United States v. Bryant,* 142 U.S.App.D.C. 132, 439 F.2d 642, *aff'd after remand,* 145 U.S.App.D.C. 259, 448 F.2d 1182 (1971), where tape recordings of conversations between the defendants and an undercover officer in a narcotics case had been lost. A year later that court determined that in the absence of due process considerations, non-negligent loss of Jencks Act material is not a ground for imposition of Jencks Act sanctions. *United States v. Perry, supra* at 98, 471 F.2d at 1066. The court further noted that even if the trial court does find some degree of negligence, "it need not automatically invoke the Jencks Act." *Id.* at 100, 471 F.2d at 1068. A recent decision by that court reveals further reluctance to adhere to the sanction threat announced in *Bryant. United States v. Quiovers,* 176 U.S.App.D.C. 265, 539 F.2d 744 (1976). This court has evidenced like misgivings in lost Jencks statement cases. *See United States v. Anderson,* D.C.App., 366 A.2d 1098 (1976); and *Moore v. United States,* D.C.App., 353 A.2d 16 (1976).

■ Alternatively, a question is whether the lost notes consituted a statement within the meaning of the Jencks Act. The implication of the trial judge's ruling that the victim could not testify as to the showup is that she found the notes to be a Jencks Act statement. That issue does not appear to have been explored with the care necessary when the question revolves around rough notes taken on the scene of a crime.[3]

---

3. Our dissenting colleague asserts that we are "bound by the conclusion of the trial court . . . that the police notes were producible." No such ruling was made and if it had been made the record would not support it. There was only one question asked about the nature of the lost notes. It was not directed to whether the notes were substan-

tially verbatim, but merely and ambiguously to whether the officer wrote down what the victim said about the accused.

For the Jencks Act to apply and for the right of discovery to exist under the Act, the records at issue must be "statements" within the meaning of the Act. And when the statement of a witness is oral, a tran-

Such notes have been held as a matter of law not to be Jencks Act statements. "The Jencks Act applies to a 'substantially verbatim recital' of an oral statement by a witness and does not apply to an officer's rough notes." *United States v. Stephens,* 492 F.2d 1367, 1377 (6th Cir. 1974). *Accord, March v. United States,* D.C.App., 362 A.2d 691, 699 (1976); *State v. Maluia,* 539 P.2d 1200, 1209–11 (Hawaii 1975). *See also United States v. Augenblick, supra; United States v. Scriber,* 163 U.S. App.D.C. 36, 43, 499 F.2d 1041, 1048 (1974); *United States v. Hines,* 147 U.S. App.D.C. 249, 264, 455 F.2d 1317, 1332 (1971), *cert. denied,* 406 U.S. 975, 92 S.Ct. 2427, 32 L.Ed.2d 675 (1972). The occasion and setting for taking rough notes should be scrutinized with great care by the trial judge. Ordinarily these notes are hastily made by officers who are incapable of recording substantially verbatim statements. Before arriving at the decision that rough notes constitute a statement of a witness within the definition of the Jencks Act, the trial court should recognize that the very nature of the situation, and the expectation that a structured statement will later be made with the contents of the rough notes incorporated therein, militates strongly against any notion that the notes themselves are producible statements. *Cf. Killian v. United States,* 368 U.S. 231, 242, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961). Before considering imposing any sanction[4] for inability to produce a statement, the trial judge should make a clear holding based on hard evidence—not on speculation or surmise—that the lost materials constitute a substantially verbatim recitation and not, as is most often the case, merely a mnemonic note. *March v. United States, supra.* In making the decision the judge

should not only keep in mind that the purpose of producing the statements is "to aid the search for truth", *Hardy v. United States, supra* at 869, but also that the inability of the government to produce a lost statement does not automatically trigger the exclusion of a victim's testimony,[5] particularly as to identification. We note that in Article III federal courts it can be argued that direct identification testimony "shall be admissible in evidence in a criminal prosecution" notwithstanding the Jencks Act. *See* 18 U.S.C. § 3502, which arguably prevents the use of Jencks Act sanctions as to identification testimony by one who "saw the accused commit . . . the crime." *Id.*

■ Pretermitting our holding, *supra,* we would be inclined to remand for a clearer ruling on the "statement" issue, *e. g., Moore v. United States, supra.* However, we also find this record sufficient to decide the case on the assumption that the lost notes did reach the level of a producible statement. Here, shortly after the robbery, Fields was arrested a few blocks from the victim's house as he stood beside his disabled car. While the officer was momentarily stopping to assist him, a description of the robbers was broadcast. The officer noticed that Fields matched the description of one of the assailants. The officer also saw on the rear seat of the car the red bandanna mentioned in the radio broadcast. Fields had in his possession $560 in cash—all in $20 bills (at least one-half the stolen money was in $20 bills) —and a gun with ammunition. He was also wearing the telltale shoes. In addition, much other material was produced for possible impeachment, and the overall credibility of Fields' identification as one of

---

scription of the statement must be "substantially verbatim" and "recorded contemporaneously". *The transcription must be a continuous, narrative recording rather than mere selective notations or excerpts from the oral statements.* . . . [*Moore v. United States, supra* at 18 (footnotes omitted; emphasis supplied).]

4. "*Bryant* does not mandate the mechanical invocation" of available sanctions. *See United States v. Quiovers, supra* at 747. *See also United States v. Butler,* 163 U.S.App. D.C. 1, 499 F.2d 1006 (1974).

5. *See United State v. Anderson, supra.*

the assailants is abundantly supported in the record. In the ultimate analysis the absence of the notes manifestly was harmless. *See* D.C.Code 1973, § 11–721(e).

We note that in *United States v. Bundy*, 153 U.S.App.D.C. 191, 472 F.2d 1266 (1972), the court held that the failure of police to produce the original notes taken during the on-scene interrogation of a robbery victim was harmless. In that case, like this one, the defendant was arrested immediately after the crime on the basis of a police radio broadcast, and the stolen money was found in his possession. We follow that holding here. *See United States v. Anderson, supra*, 366 A.2d at 1101 ("possibility of prejudice . . . was either minimal or nonexistent"). *See also United States v. Quiovers, supra* at 746, where reference is made to a required "colorable argument" of prejudice.

Since *Bundy* also discussed an assumed *Brady v. Maryland*, 337 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) issue, with which we are not presented, we need not consider whether the loss was harmless beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967). This statutory "Jencks issue" is quite different from a *"Brady* question" of constitutional dimensions, and we do not assume that lost statements constitute *Brady* material. *Cf. United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

We hold that the trial court did not commit reversible error in permitting the victim to testify as to his identification of Fields. Accordingly, the judgment of conviction is

*Affirmed.*

YEAGLEY, Associate Judge, concurring:

I concur in the opinion of the court and add the following. The legal resolution of a case is controlled by the facts. My understanding of the facts in this case is that the victim, Bruzzo, and the former police officer, Huff, testified that Bruzzo identified the appellant at the showup, largely by the unusual shoes appellant was wearing which he said looked the same as those worn by the robber and also by items of clothing, his build and hair.

The only testimony as to the nature of the officer's notes was the following:

Q. Did you write down what Mr. Bruzzo said with respect to this individual?

A. Yes sir. I'm sure I did.

There was no inquiry made and no testimony whatever offered as to whether the notes met the test of "substantially verbatim" as required of Jencks Act statements. The court here did not make a finding that the notes were substantially verbatim but it treated them as a Jencks statement and struck the showup testimony. Later after the government moved to reconsider the Jencks Act ruling the court said that the missing notes "appear to have been verbatim".

Officer Kennedy, who was present and whose testimony on appellant's motion out of the presence of the jury was supported by brief notes, testified that Mr. Bruzzo said, "Yes, that's him". In answer to the question of whether he took everything down that Mr. Bruzzo said at that time he replied, "No, I was not able to." Later he said, "It's just not possible to get every single word in there."

In *Moore v. United States*, D.C.App., 353 A.2d 16 (1976), we said that: "The transcription must be a continuous, narrative recording rather than mere selective notations or excerpts from oral statements." [*Id.* at 18; footnote omitted.] There can be no doubt that is a correct statement of the law. In this record I find no evidence whatever to support the court's finding that the lost notes were "verbatim".

We also said in *Moore v. United States, supra* at 19, regarding lost notes that:

Before deciding whether sanctions should have been imposed, however, it is necessary to know whether the notes were Jencks Act statements and whether the substance of the notes was incorporated in other documents.

It appears to me to be a mockery of justice to say that although a victim has definitely identified a perpetrator of a crime at a showup, according to three witnesses, that the jury shall be denied that testimony because one of the officers who had since left the force had taken some sort of notes at the time but could not locate them for trial. No bad faith was shown. There is no testimony as to the extent or detail of the notes. There is substantial evidence that the identification in fact occurred and this is corroborated by Officer Kennedy's notes.

The thrust of our dissenting colleague's postion as to what she understands the law to be is found in a rather broad statement in the first paragraph of the dissent wherein it is stated without citation of supporting authority: "Upon such a finding the trial court was required to strike at least all of that portion of the witness' testimony relating, for impeachment and cross-examination purposes, to the subject matter of the missing statement—*here, the identification testimony.*" [Footnote omitted; emphasis added.]

It is difficult to understand the argument that not only should Mr. Bruzzo be barred from testifying that he had made a showup identification of the defendant, at which the missing notes were taken but also that he should be barred from testifying that on a later occasion he had picked the appellant out at a lineup.

The Jencks Act requirement as to striking testimony only relates to the testimony as to what was said on the occasion when the notes were taken; in this case the

showup. The question of permitting testimony concerning the subsequent lineup is one of identification, that is whether the victim could identify the suspect at the lineup as a result of his having observed him at the time of the robbery. This the trial court clearly found that he could do. Although the court is quoted accurately in footnote 3 of the dissent to the effect that it would have to rule out the testimony regarding the lineup, the court clearly reversed this ruling almost immediately. In response to the counter argument of the prosecutor it stated: "Yes, I will reverse myself. You are right. I have to agree with you." The prosecutor then inquired if the court was making a finding of an independent source "for an in-court identification" and the court replied: "Yes. I am making a finding that there is an independent source based on the characteristics which Mr. Bruzzo saw during the robbery." Thus, there being an independent source, the court permitted not only an in-court identification but also allowed the witness to testify, without further objection, concerning his lineup identification. *See* note 4, *supra,* in the opinion of the court.

The showup was not illegal, did not infringe on defendant's constitutional rights and there is ample evidence to support the court's ruling that it did not taint the lineup or in-court identification.

MACK, Associate Judge, dissenting:

In this case the trial court, after hearing testimony for the purpose of considering Jencks Act requirements, specifically found that "lost" notes were producible as a substantially verbatim recital of a victim's statement made at a showup, that the identification issue was a "crucial one" for appellant, and that the police exercised "bad judgment in failing to preserve those notes." Upon such a finding the trial court was required to strike at least all of that portion of the witness' testimony relating, for impeachment and cross-exami-

nation purposes,[1] to the subject matter of the missing statement—here, the identification testimony. *See* 18 U.S.C. 3500(d) (1970). This is what I understand the position of the appellant to be, and I think such position a sound one.

In sustaining this conviction, the majority has engrafted upon the statutory provisions of the Jencks Act a constitutional concept which is incompatible with the express wording of the statute, which first was urged and then discarded by the government in the trial court, and which is not advanced by the government in this Court. The reasoning appears to be that if there is an "independent source"[2] for testimony which is otherwise inadmissible because of sanctions required by the Jencks Act, such testimony is admissible notwithstanding the Jencks Act. No authority whatever is cited for this pronouncement, except the broad statement that the Jencks Act was intended to aid in the search for truth—a principle with which no one would disagree.

The independent source theory was first introduced by the government in response to the trial court's ruling that the complainant's identification testimony would be stricken as the sanction for the Jencks violation. The government argued that if it could establish an independent source for the lineup and in-court identifications, then only the showup testimony need be stricken. The court acquiesced in this effort, and the complainant was recalled to the stand to testify as to independent source. Following such testimony, the trial court

found no independent source for the lineup testimony.[3] Then the prosecutor argued that the Jencks statute did not bring into play the legality of a confrontation and since the showup was constitutionally lawful, the lineup could not be "tainted." The trial court agreed. On this state of affairs, the lineup identification was admitted. Next, the in-court identification was admitted on the basis of the trial court's ruling that there was an independent source for such identification, despite the fact that neither counsel had questioned the complainant on this point.

In this court, since the majority now thinks that the independent source theory is determinative, it must reckon with the trial court's evidentiary finding that the lineup identification was based upon the showup. It must also reckon with a record showing insufficient evidence in support of the trial court's finding of an independent source for the in-court identification. It was at the showup that the complainant presumably saw, for the first time, the face of the man who had worn the bandana across his face and the unique shoes during the commission of the crime, and whom he subsequently identified at the latter two encounters.

In any event, "taint" and "independent source" are irrelevant to the Jencks issue (as both parties have now apparently concluded). The remedy for a Jencks Act violation rests not in a constitutional "exclusionary rule" as modified by the "independent source doctrine," but in the Jencks Act itself. In my opinion, therefore, the

1. *See, e. g., Hardy v. United States*, D.C. App., 316 A.2d 867, 869 (1974); *United States v. Perry*, 153 U.S.App.D.C. 89, 94, 471 F.2d 1057, 1062 (1972); *United States v. Birnbaum*, 337 F.2d 490, 497–98 (2d Cir. 1964).

2. By analogy to *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

3. The trial court said:
   Now Mr. Bruzzo has indicated in his cross-examination about the fact that he

had seen the defendant's face, was a part of the basis of his identity at the lineup. While he refers to other physical characteristics of the defendant as being part of that, nevertheless it appears to the Court that the fact that he has seen the defendant, has seen the defendant's face prior to the lineup, it occurs to the Court that it would be very difficult to determine having seen the defendant's face that that would not form a strong basis for the identity in the lineup, and I believe I would have to rule out the evidence of the lineup procedure on that basis.

trial court, having determined to invoke the Act's sanctions, erred in refusing to strike all of the identification testimony.[4] Despite the strongly corroborative circumstantial evidence linking appellant to this crime, one would be hard-pressed, in this single-witness identification situation, to find that the trial court's action was harmless error. The defense has suggested that such an approach would be ludicrous, and the prosecutor at oral argument candidly conceded that if the Jencks Act were controlling here[5] and the trial court erred in not striking the testimony, then the government could not urge that it was harmless error. Testimony at the Jencks hearing revealed that those present at the showup (police officers and complainant) had significantly different recollections of what the complainant had said when confronted with the appellant at that time, and the

identification issue, according to the trial court, was crucial. I would, therefore, reverse.

But this is not the end of the matter. My colleagues, having added new dimensions to the Jencks Act, make further representations which I find to be either gratuitous or contrary to established law in this jurisdiction.

I am at a loss as to why, in view of the trial court's finding that the officer's notes were a substantially verbatim recital of the statement of the witness,[6] the majority suggests that "[[w]e first must consider] whether the lost notes constituted a statement within the meaning of the Jencks Act," before concluding that the record was sufficient to decide the case on the "assumption" that the notes did constitute such a statement. The Supreme Court has

4. I do not question, of course, that the trial court has considerable discretion in applying the Jencks Act, i. e., in weighing the degree of government culpability and the prejudice to the accused. *United States v. Perry, supra* note 1.

5. In this court the government having abandoned the independent source theory, argues that it is not the Jencks Act but the law of *United States v. Bryant,* 142 U.S.App.D.C. 132, 439 F.2d 642, *aff'd after remand,* 145 U.S.App.D.C. 259, 448 F.2d 1182 (1971), which is controlling when the government fails to produce a statement because it has been lost. The latter law, argues the government, permits the trial court to choose from a wide range of sanctions.

6. When asked if he had written down what Mr. Bruzzo said with respect to the defendant, former Officer Huff—whose notes were missing—testified, "Yes sir. I'm sure I did." (It was Officer Kennedy—whose notes were produced—who testified that he tried to take down the exact words of everything Mr. Bruzzo said but in fact was not able to get every word).

After hearing the complainant's and the police officers' testimony, and arguments of counsel, the trial court stated:

It is also the Court's opinion that the issue is a crucial one to the defendant.

It is the Court's opinion . . . that there is a requirement upon the Police Department to maintain those records, and

in light of the regulations which were promulgated the Court thinks that there is bad judgment in failure to preserve those notes, and under the circumstances the Court is going to eliminate the testimony, the identification of Mr. Bruzzo.

After a recess, the government moved the court "to reconsider the judgment of applying the Jencks sanction," in light of a particular case, and both sides addressed the issue of whether or not the notes were "substantially verbatim" Jencks material. After considerable argument on this point, the trial court ruled:

THE COURT: . . . [W]ith respect to the testimony of former detective Huff, it would appear to the Court that the notes . . . appear to have been verbatim . . . and the Court does not find it persuasive to change the Court's ruling after having read Schreiber [sic]. [*See United States v. Scriber,* 163 U.S.App. D.C. 36, 499 F.2d 1041 (1974).]

PROSECUTOR: . . .

Is it Your Honor's ruling that the complaining witness may not testify to the . . . confrontation between he and the accused when he is brought to Court?

THE COURT: Right.

PROSECUTOR: Is it Your Honor's ruling that no other officer may testify to that conversation?

THE COURT: No.

. . . [M]y ruling with respect to the Jencks matter . . . goes to Mr. Bruzzo.

told us quite clearly that Jencks Act questions are to be resolved by the trial court, subject to limited review at the appellate level. *Goldberg v. United States,* 425 U.S. 94, 96 S.Ct. 1338, 1342, 1347–48, 47 L.Ed.2d 603 (1976); *United States v. Augenblick,* 393 U.S. 348, 355, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969); *Palermo v. United States,* 360 U.S. 343, 353, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). The *Goldberg* decision, in holding that an appellate court erred in undertaking to make an initial determination as to whether materials constituted producible statements under the Act, questioned "[i]f that function may ever be properly undertaken by a court of appeals." 96 S. Ct. at 1347. Our own court only recently held that a "clearly erroneous" standard is the appropriate measure by which we are to review the trial court's conclusion that requested material, by virtue of its contemporaneous and substantially verbatim qualities, falls within the reach of the Act. *March v. United States,* D.C.App., 362 A. 2d 691, 702 (1976). *See also Johnson v. United States,* D.C.App., 336 A.2d 545 (1975).

Applying this standard, it appears to me clear that we are bound by the conclusion of the trial court in the instant case that the police notes were producible. That such investigative police notes constitute potentially producible statements under the Act is also clear. *See Moore v. United States,* D.C.App., 353 A.2d 16, *aff'd after remand,* 363 A.2d 288 (1976). *See also Williams v. United States,* D.C.App., 355 A.2d 784 (1976); *Jackson v. United States,* D.C.App., 354 A.2d 869 (1976); *Jones v. United States,* D.C.App., 343 A.2d 346 (1975); *Hardy v. United States,* D.C.App., 316 A.2d 867 (1974); *Banks v. United States,* D.C.App., 305 A.2d 256 (1973); *United States v. Harris,* 543 F.2d 1247 (9th Cir. 1976); *United States v. Harrison,* 173 U.S.App.D.C. 260, 524 F.2d 421 (1975); *compare* language in *March, supra,* purportedly relying on the concurring opinion of Mr. Justice Powell in *Goldberg, supra,* but which, in turn, I read as being addressed, not to rough police notes but to "typical interview notes" made by the prosecutor in preparation for trial (notes nevertheless held to be producible under the Jencks Act).

Finally, I believe it is a little late in the game to suggest that an "election" by the United States not to produce under the Act contemplates only a deliberate refusal or a deliberate destruction and that sanctions should not be applied for the "negligent" loss of notes. *See Jones v. United States, supra; Hardy v. United States, supra; United States v. Perry,* 153 U.S.App.D.C. 89, 471 F.2d 1057 (1972);[7] *United States v. Bryant,* 142 U.S.App.D.C. 132, 439 F.2d 642, *aff'd after remand,* 145 U.S.App.D.C. 259, 448 F.2d 1182 (1971). *See also United States v. Harris, supra.* Indeed the very authority relied upon by the majority confirms that the trial court, before imposing a sanction, need only find that the government's conduct amounted to one of the following: (1) negligence and bad motive, (2) negligence and bad judgment, (3) purposeful destruction and bad motive, or (4) purposeful destruction and bad judgment.[8]

---

7. In *United States v. Perry,* for example, *supra* at 94, 471 F.2d at 1062, the court expressly rejected the government's argument that "a 'good faith' loss of evidence or statements . . . should not invoke the statutory sanctions of the Jencks Act," noting, *inter alia,* that:
The United States might have 'elected' to destroy the statement . . . . Or it might have acted *negligently,* and the policy of the statute, the quest for truth, is undercut as much by governmental *negligence* as by intentional acts of destruction. . . .

We do not read 'elect' in the literal or narrow sense, but rather as a purposive or *negligent* act on the part of the Government which has as a direct and foreseeable result the loss or destruction of documents which otherwise the Government could be compelled to produce. [*Id.* at 95, 471 F. 2d at 1063 (emphasis added).]

8. *Hardy v. United States, supra* note 1, at 870, *quoting United States v. Perry, supra* note 1, at 99, 471 F.2d at 1067.

Here, the trial court expressly found negligence and bad judgment.

The government has suggested here that there was considerable confusion on the part of the trial court as to the appropriate remedy to be applied for the loss of the notes. I would be amazed if it were otherwise, in view of the morass emerging as a result of the gratuitous and inconsistent thinking finding its way into our decisions interpreting the Jencks Act. Today's decision, in which the majority seeks to carve an "independent source" exception out of the Act in order to avoid imposing the sanction expressly mandated by Congress, adds considerably to that confusion. I respectfully dissent.