Charles SAVAGE, Appellant,

v.

UNITED STATES, Appellee.

No. 7138.

District of Columbia Court of Appeals.

Argued Oct. 17, 1973.

Decided Jan. 18, 1974.

---

Stephen S. Millstein, Washington, D. C., for appellant.

Regina C. McGranery, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Joseph F. Mc-Sorley, Asst. U. S. Attys., were on the brief, for appellee.

Before GALLAGHER and PAIR, Associate Judges, and QUINN, Associate Judge, Retired.

PAIR, Associate Judge:

Appellant was found guilty of carrying a dangerous weapon [1] and sentenced to a term of imprisonment of one to three years.[2]

---

1. D.C.Code 1973, § 22–3204.

2. Because appellant had previously been convicted of a felony the sentencing provisions of D.C.Code 1973, § 22–3215, were not available.

On appeal it is contended that the court erred when, at the hearing on a motion to suppress, it (1) failed to order stricken the testimony of the arresting officer after the government was unable to produce a notebook which was believed to contain notes made by the officer of a meeting with an informant, and (2) failed to order disclosure of the identity of the informant. We find, on the facts of this case, that the assignments of error involving—as they do—discretionary rulings of the trial court,[3] do not require reversal. The government concedes, however, and we so hold, that the enhanced penalty provisions of D.C.Code 1973, § 22–3204, were not properly invoked. We therefore vacate the sentence imposed and remand for resentencing. *See* Smith v. United States, D.C.App., 304 A.2d 28 (1973).

At the hearing on the motion to suppress there was testimony in substance as follows. On July 25, 1972, about 10:30 a. m., Sergeant Williams and Officer Hill, both assigned to the Office of Drug Abuse Law Enforcement (DALE), met with a reliable informant in the vicinity of 7th and K Streets, N.W., to discuss a matter unrelated to the case now on appeal. At 12:30 p. m., the same day, Sergeant Williams and Officer Hill met again with the informant in the same area. At that time the informant described to them a Negro male known as "Charlie" and having brown skin, a large bush haircut and a full beard. He was said to be approximately five feet and nine inches tall, to weigh about 170 pounds, and to be wearing a brown and white striped, long-sleeved shirt, beige Levi trousers and brown construction boots. The information given the officers was that the informant had seen Charlie at the front of 1012 N Street, N.W., selling methamphetamine; that Charlie was known to carry a gun; and that he (the informant)

had just seen a gun in Charlie's possession. There was testimony that notes were made of the information given them by the informant,[4] and that the officers thereafter proceeded immediately to the area and, seated in an unmarked car parked on 11th Street, N.W., near N Street, observed for several minutes a man who answered the description of Charlie and who was later identified as appellant. Appellant was at that time seated on the steps at premises 1012 N Street, N.W., and was observed to go inside the building at that address where he remained while the officers watched. After waiting 20 minutes the officers returned to their informant and asked him to notify the police if and when appellant returned and was observed to either sell "BAM" or possess a gun.

Sometime thereafter, Sergeant Williams and Officer Hill, while investigating another matter, received a "radio run" from Officer Prosek of the Bureau of Narcotics and Dangerous Drugs. Officer Prosek advised them that the informant with whom they had met earlier in the day had just informed him that the subject known as Charlie was at 11th and O Streets near the telephone company building "with a gun in his waistband." Sergeant Williams and Officer Hill proceeded at once to that location and observed appellant seated in a chair on the east side of the building in the company of two other persons. The officers recognized appellant from the description which had been given them by the informant and from their observation of him less than three hours earlier. The officers approached appellant and Sergeant Williams held out his credentials and identified himself as a police officer. Appellant merely handed the officer a package of Kool cigarettes and uttered an obscenity. Appellant was then required to stand and Sergeant Williams frisked him and seized

---

3. *See and compare* United States v. O'Brien, 444 F.2d 1082, 1087 (7th Cir. 1971).

4. There was inconclusive testimony as to which officer made the notes but when they

were not produced Sergeant Williams made an explanation apparently satisfactory to the court.

from the right rear waistband of his trousers a weapon.

Appellant was the sole witness for the defense. He explained the possession of the gun at the time of his arrest saying that it had been given to him by one Laurence—a friend of his—whose last name he believed to be Smith. Appellant assumed that the gun was operable and that Laurence, known by him to be an addict, had gone to buy narcotics. Although he did not have a license to carry a gun, appellant placed it on his right hip under his belt and pulled his shirt over it.

The theory of the defense was that (1) the officers had illegally searched appellant and then "manufactured" a fictitious informant after the fact, cf. Adams v. Williams, 407 U.S. 143, 151–152, 92 S.Ct. 1921, 32 L. Ed.2d 612 (1972) (Brennan, J., dissenting), or alternatively (2) the informant and Laurence were identical and that the government had entrapped appellant.[5]

We consider initially the court's failure to strike Officer Williams' testimony subsequent to the non-production of the notebook. While it is now settled that Jencks Act[6] material is properly producible at the hearing on a pretrial motion to suppress, see United States v. Dockery, D.C.App., 294 A.2d 158 (1972), it is also settled that the Jencks Act applies only where the witness, who is the putative source of the material, has himself testified, United States v. Dockery, supra at 161, and the notes are " 'substantially verbatim' statements within the meaning of the Act." See United States v. Hines, 147 U.S.App.D.C. 249, 264, 455 F.2d 1317, 1333 (1972).

 Here, assuming that notes were made by Sergeant Williams, they could have had no bearing on the testimony of Officers Hill and Prosek.[7] Moreover, the notes pertained to a conversation with the informant in the early afternoon and thereafter the officers personally verified much of what they had been told. The frisk which yielded the gun was therefore the product of information obtained in the late afternoon when they received a "radio run" of a man with a gun at a certain location. Upon arrival at the front of the telephone company building the officers were satisfied that the information was correct as to location and the description of the suspect. These facts and the surrounding circumstances clearly gave the officers grounds for a Terry[8] frisk. Thus, assuming without deciding that the court erred in failing to strike the testimony of Sergeant Williams because he failed to produce notes of the early afternoon conversation with the informant, there was nevertheless sufficient independent evidence in the testimony of Officers Hill and Prosek to justify the search and withstand the motion to suppress. The conclusion is thus compelled that the error, if any, was harmless.[9] We note again that the police department has promulgated a regulation

---

5. The court held an in-camera hearing with respect to the informant. After extensive disclosure ·by the government, the court concluded that the informant and Laurence were two different individuals.

6. 18 U.S.C § 3500.

7. We know of no authority under the Jencks Act or otherwise for striking the testimony of all government witnesses because of non-production in regard to one witness.

8. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Here, as in Adams

v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the police were possessed of sufficient credible information which had indicia of reliability to justify a protective frisk.

9. Accord, Banks v. United States, D.C.App., 305 A.2d 256 (1973). In this respect it is noteworthy that the Jencks Act establishes a rule of evidence, not a constitutional rule. See United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969).

requiring the preservation of potentially discoverable material and we assume that the situation here described will not again recur. *See* Metro. Police Gen. Order Series 601, No. 2, effective May 26, 1972. In fact, the government on another occasion represented to the court that this kind of a situation would not recur. *See* Banks v. United States, D.C.App., 305 A.2d 256 (1973).

■ Appellant's fall-back position is that, assuming there was an informant, the court erred in refusing to order disclosure of his identity. Appellant's theory is that if Laurence and the informant were one and the same an entrapment defense would have been available.[10] There is, however, no hard and fast rule with respect to the informant's privilege. Roviaro v. United States, 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). It is only when disclosure is relevant and helpful to a fair determination that the privilege must give way. Roviaro v. United States, *supra* at 61, 77 S.Ct. 623. In this case, unlike *Roviaro*, appellant was charged with illegal possession of a weapon, a general intent crime. By his own testimony, the possession of the weapon extended over a considerable period of time and was clearly illegal. *See* Mitchell v. United States, D.C.App., 302 A.2d 216 (1973). Assuming, *arguendo*, that appellant's theory as to the identity of the informant could have been factually supported, it seems clear that possession of the weapon was knowing and voluntary rather than the result of "artifice or stratagem." Moreover, after examination of the sealed record certified to this court, we are satisfied that no entrapment issue existed. The judgment of conviction is therefore affirmed, the sentence imposed thereon is vacated, and the cause remanded for resentencing.

So ordered.

**10.** *But see* United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973).