**Maurice HAMILTON, Appellant,**

v.

**UNITED STATES, Appellee.**

**Michael BARNES, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 12714, 12809.**

District of Columbia Court of Appeals.

Argued Sept. 19, 1978.

Decided Nov. 7, 1978.

Dennis M. O'Keefe, Chicago, Ill., appointed by the court, for appellant Hamilton.

Richard J. Toth, Washington, D. C., appointed by the court, was on the brief, for appellant Barnes.

Paula J. Page, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Michael W. Farrell and David W. Stanley, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, GALLAGHER and HARRIS, Associate Judges.

KELLY, Associate Judge:

After convictions of carrying a pistol without a license (D.C.Code 1973, § 22–3204), appellants Maurice Hamilton and Michael Barnes appealed, citing as error the trial court's denial of their joint motions to dismiss the indictment for want of a speedy trial and for compulsory disclosure of the identity of the government's informant. In addition, appellant Barnes cites as error the denial of his motion to sever, and claims also that there was insufficient evidence produced at trial to support his conviction. We affirm.

On March 29, 1976, Metropolitan Police Department Officer Carl A. Occhipinti received an informant's tip to the effect that appellant Hamilton would be operating an automobile in the vicinity of 4th and M Streets, N.W., accompanied by another black man, and that a gun could be found in the car. Acting upon the information and relying on his familiarity with Hamilton's automobile, the officer stopped the car. Hamilton's young son was also in the car at

the time. The officer instructed appellants to get out of the car, which proved to be a difficult task for Barnes as the passenger side door was inoperable. The officer then frisked appellants and searched the car. The search revealed the gun, which was wedged between the front seat and the passenger's door and was wrapped in a partially opaque plastic bag. Appellants were then placed under arrest.

At trial, the government presented Officer Occhipinti as its only witness. The officer testified that his informant was well known to him and had, in the past, always provided reliable information to him. The officer also stipulated that the gun was not in plain view. During cross-examination of the witness, the government objected to appellants' attempts to obtain information which could reveal the informant's identity, arguing that such information would endanger the life of the informant as well as his usefulness.[1]

Appellant Hamilton produced only two witnesses at trial: his common-law wife and her sister. Both testified that they had seen appellant Barnes in possession of the gun before his arrest and that Barnes had told them (individually) that the gun was his. Both testified also that they did not alert Hamilton to the fact that Barnes had a gun and indicated that the circumstances which prevailed on the day of the arrest suggested that Hamilton had no knowledge of the gun. Appellant Barnes produced no witnesses and did not testify on his own behalf. He merely argued that there was no evidence to prove that the gun was his.

■ Appellants first argue that the identity of the informant should have been disclosed to them. They base this argument both on the *Roviaro* balancing test, *infra*, and the holding in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that the government must disclose to defendants any evidence which it holds that is

material and favorable to the defendants. Because appellants proffered nothing, beyond mere speculation, to show that the government's informer could have provided evidence which was material and favorable to their defense, and because that showing is central to both the *Roviaro* and the *Brady* claim, both claims can be dismissed in a single discussion.[2]

In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court held that in order to determine whether the government must be forced to disclose the identity of an informant, the benefits to the defendant of such disclosure should be weighed against the strong public policy of protecting and promoting informants. In making this determination, a court should examine "the crime charged, the possible defenses, [and] the possible significance of the informer's testimony . . . ." *Id.* at 62, 77 S.Ct. at 629. The moving party must demonstrate that the informer is more than a mere informer, *see Miller v. United States*, 273 F.2d 279 (5th Cir. 1959); *i. e.*, that he was a participant, an eyewitness, or that he could give direct testimony on the events at issue. *United States v. Skeens*, 145 U.S.App.D.C. 404, 408, 449 F.2d 1066, 1070 (1971).

■ The decision to compel disclosure rests within the sound discretion of the trial court, *Roviaro v. United States, supra* 353 U.S. at 61 n.9, 77 S.Ct. 623, and the burden of proof is entirely on the defendant. *United States v. Skeens, supra* at 408, 449 F.2d at 1070. A disclosure request must not be based on mere speculation, *id.*, or suspicion, *United States v. Alverez*, 472 F.2d 111, 113 (9th Cir.), *cert. denied*, 412 U.S. 921, 93 S.Ct. 2742, 37 L.Ed.2d 148 (1973); it must be demonstrated that the informer would have offered testimony helpful to the defense. The inquiry thus becomes, was there a reasonable basis to believe that the informer could offer evidence as to the actual ownership or possession of the gun in this case.

1.  A pretrial disclosure motion had been denied.

2.  It could be argued that the holding in *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), that the government need not disclose to the defendant the name of an informer who will testify against him, could be expanded to apply to nondisclosure of informants who will not testify. That expansion, however, seems tenuous and unnecessary.

Appellants did not meet their burden of showing that disclosure was required. Given that they did not know the identity of the informer, at first blush it may seem difficult to imagine a means by which appellants could show that the informer would testify to material facts. *Roviaro v. United States, supra,* however, sheds some light on this problem. There, the appellant was charged with transporting for sale illegally obtained heroin. The informer was an intimate part of that transaction.[3] The Court noted: "[T]his charge, when viewed in connection with the evidence introduced at the trial, is so closely related to [the informer] as to make his identity and testimony highly material." *Id.* 353 U.S. at 63, 77 S.Ct. at 629. Here, there were only two parties to the offense. It is uncontradicted that the gun was found in the car; thus, the only evidence that would benefit either appellant would be testimony that would place the gun exclusively in the hands of the other. The informer's testimony would have to dispel the inference that one appellant was not in constructive possession of the gun. Neither appellant, by his proffer, laid a plausible evidentiary foundation for such a conclusion. In short, the trial judge's refusal to compel disclosure was not an abuse of discretion.

▄ Appellants contend second that their case should have been dismissed because of the government's failure to bring them to trial in a speedy and deliberate fashion. We have commented many times on the Supreme Court's announcement in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), of a four-pronged balancing test to determine whether such a delay caused undue harm to the defendant. *E. g., United States v. Bolden,* D.C.App., 381 A.2d 624 (1977); *Branch v. United States,* D.C.App., 372 A.2d 998 (1977). Consequently, we have examined with care the seventeen-month delay between arrest and trial in this case to be sure that the government has satisfied its heavy burden of justifying the delay. *Id.* Suffice it to say, that despite the seemingly inordinate length of time in disposing of a simple one-day trial, the delay was attributable to each party in fairly equal parts, and the government has successfully shown that any inferential prejudice to appellants resulting from the delay was minimal. A chronological recitation of each quantum of delay is, under the circumstances, unnecessary, and we conclude that it was not error to deny the motions to dismiss for want of a speedy trial.

Appellant Barnes cites two alleged errors in which appellant Hamilton does not join. He first argues that the trial court abused its discretion by denying his motion for severance. He does not argue that the cases were improperly joined under Super. Ct.Cr.R. 8(b).[4]

▄ Super.Ct.Cr.R. 14 states that "[i]f it appears that a defendant . . . is prejudiced by a joinder . . . of defendants in an indictment . . . or by such joinder for trial together, the court may . . . grant a severance of defendants or provide whatever other relief justice requires." The trial court has "extremely wide latitude" in determining whether to sever a case, *Clark v. United States,* D.C.App., 367 A.2d 158, 160 (1976), and its findings will not be reversed unless they are clearly erroneous, *e. g., Schaffer v. United States,* 362 U.S. 511, 513, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). The decision to sever should be made where defendant can show that "the defendants present conflicting and irreconcilable defenses and there is a danger that the jury *will* unjustifiably infer that this conflict alone demonstrates that both are guilty . . . ." *Rhone v. United States,* 125 U.S.App.D.C. 47, 48, 365

---

3. The concept that the appellant transported and dealt with the informer and still does not know his identity is elusive. Nevertheless, that was the Court's finding. *Roviaro v. United States, supra* 353 U.S. at 60 n.8, 77 S.Ct. 623.

4. The Supreme Court in *Schaffer v. United States,* 362 U.S. 511, 514, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960), indicated, but did not state explicitly, that a failure to allege or show that there was improper joinder should be considered upon review of a denial of a motion to sever.

F.2d 980, 981 (1966) (emphasis added).[5] Mere testimonial conflicts, *Baxter v. United States*, D.C.App., 352 A.2d 383, 385 (1976), or presence of hostility, *United States v. Barber*, 442 F.2d 517, 530 (3d Cir.), *cert. denied*, 404 U.S. ⁰58, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971), will not create a sufficient basis for justifying a severance.

■ The government points to the word "alone" in *Rhone v. United States, supra*, as meaning that the motion to sever is not improperly denied where there exists any evidence independent of codefendant's or codefendant's witness' testimony upon which a jury could convict. *See United States v. Leonard*, 161 U.S.App.D.C. 36, 47–48, 494 F.2d 955, 966–67 (1974). Moreover, it should be noted that the court in *Rhone* stated, "a danger that the jury *will* unjustifiably infer . . . ." *Rhone v. United States, supra* at 48, 365 F.2d at 981 (emphasis supplied). Therefore, a defendant must show more than a possibility or even a likelihood of prejudice before he can prevail.

■ Barnes has not here shown the requisite prejudice. His argument is that since Hamilton presented two witnesses who said that the gun belonged to Barnes, and since the government did not intend to call these witnesses, he was convicted by the testimony of codefendant's witnesses and nothing else. That allegation is incorrect. First, the government agrees that it did not intend to call the witnesses because it could not vouch for their credibility, and surely Barnes cannot be heard to say that he was convicted only on the testimony of witnesses that the government considered to be incredible. Moreover, Barnes would have to admit that the government would have been free to call the witnesses in a trial in which Barnes was the only defendant. Second, the testimony presented did not rebut the government's theory of joint constructive possession. The witnesses testi-

fied only that they saw the gun in Barnes' exclusive possession at some time before the arrest. They could not say that Hamilton did not know of the presence of the gun in the car or even that the gun did not actually belong to Hamilton. To the extent that the jury did not credit the testimony of these witnesses, it could not be reversible error for the trial judge to deny the motion to sever.

■ Appellant Barnes finally urges this court to reverse his conviction for lack of evidence to support it. This claim is without merit. Appellant agrees that we must look at the evidence in a light most favorable to the government. *Calhoun v. United States*, D.C.App., 369 A.2d 605, 607 (1977). If in that light there was no evidence upon which a jury could base its conviction, then the conviction should be reversed. *Patterson v. United States*, D.C. App., 301 A.2d 67, 70 (1973); *Kenhan v. United States*, D.C.App., 263 A.2d 253, 254 (1970). Although the evidence presented by the government was sparse, there was evidence sufficient to support a guilty verdict. The government produced one witness who said that he found the gun in the car and the gun was under the exclusive control of no single individual. The witness said that the car in which the gun was found was occupied by appellant Barnes, and that Barnes was sitting in the passenger seat next to the gun. The government argues, persuasively, that this court has found even less evidence sufficient to support a conviction. *E. g., Jones v. United States*, D.C. App., 299 A.2d 538 (1973) (codefendant admitted ownership of the weapon); *Waterstaat v. United States*, D.C.App., 252 A.2d 507 (1969) (codefendant admitted ownership and disclaimed defendant's knowledge of its presence). Since the government alleged joint constructive ownership, it need only prove up those facts which it did in order

---

5. The court in *Rhone* set out three exemplary situations in which a severance is required. In addition to the one noted above, the court also isolated situations where one defendant "makes an inculpatory statement inadmissible against his codefendant . . . and where only one defendant testifies and urges the jury to draw an adverse inference from his codefendant's silence." *Id.* at 48, 365 F.2d at 981 (citations omitted). These situations are, of course, merely exemplary; a severance could be warranted in other situations.

for a jury to have a basis from which to convict.

*Affirmed.*