**James D. STURGESS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CF–23.**

District of Columbia Court of Appeals.

Submitted Feb. 13, 1992.

Decided Nov. 10, 1993.

Edward D. Joseph, appointed by the court, was on the brief, for appellant.

Jay B. Stephens, U.S. Atty., at the time the brief was filed, with whom John R. Fisher, Margaret Flaherty, and Edward G. Burley, Asst. U.S. Attys., were on brief, for appellee.

Before WAGNER and KING, Associate Judges, and BELSON, Senior Judge.

KING, Associate Judge:

Appellant was convicted after a jury trial of a single count of distribution of a controlled substance in violation of D.C.Code § 33–541(a)(1) (1988). He was sentenced to a three to nine year term. The only issue raised on appeal relates to the denial of his motion for disclosure of the identity of a confidential informant. We affirm.

---

## I.

On July 17, 1989, Special Agent Zebedee Graham of the Bureau of Alcohol, Tobacco, and Firearms was operating as an undercover narcotics officer in the District of Columbia. Based on information provided by a confidential informant, Agent Graham learned that drugs were being sold from 19 T Street, N.W. In response, he went to that address and was allowed admission by an "unknown black female." When Graham entered, he immediately walked into a well-lighted living room where he saw appellant sitting on a table top with five or six plastic containers containing individual rocks of crack cocaine. Three other persons were ahead of Graham seeking to make purchases.

After the others completed their transactions, Agent Graham approached the table, paid appellant twenty dollars, and selected a rock of cocaine. Although the agent was within four feet of appellant during the transaction, no conversation between Graham and appellant took place.[1] Graham then left the premises. Laboratory analysis of the rock purchased established that it contained a usable amount of cocaine.

On June 28, 1990, a hearing was conducted in the trial court on a matter unrelated to the issue raised on appeal. In the course of that hearing, however, appellant learned that during the undercover operation Agent Graham was accompanied by the confidential informant. Graham testified that the informant[2] went with him to 19 T Street and was present in the living room with the agent when he made the buy. Graham was certain the informant was able to observe the seller.

Based on that information, appellant filed a Motion for Disclosure of Identification of Eyewitness. At the hearing on that motion, the prosecutor informed the court that the informant knew appellant and had provided a description of him. Judge Burgess denied appellant's motion for disclosure, but permitted defense counsel to submit written questions to be answered by the informant. The trial court further ordered that the informant provide responses to the questions in writing under oath and that the answers be submitted to defense counsel before trial with the informant's name expunged. Included with the questionnaire was a photo of appellant for purposes of identification. The informant's sworn responses to the questions were provided to defense counsel prior to trial.

At trial, the government presented Agent Graham as the only witness to the transaction and to the identity of the seller. He testified to the events as set forth above. The defense called appellant's wife as its only witness. The wife claimed that she and appellant had spent the time between 12:30 p.m. and 11:00 p.m. on the day of the sale at the home of appellant's father at 1830 North Capitol Street—an address which is around the corner from 19 T Street. The witness also testified that she and appellant had formerly lived at the T Street address and both had keys to the premises. Before moving into 19 T Street, she resided next door to that address. Since leaving that area, she has returned to 19 T Street to visit the girlfriend of one of the owners of the premises on ten to fifteen occasions. Appellant accompanied her on some of the visits.

## II.

In *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court reversed a trial court ruling that permitted the government to withhold disclosure of the name of its informant in a case involving a prosecution for drug related offenses. The Court concluded that the trial court erred because the informant played a material part in bringing about possession of the drugs, was present at the time the offense was committed, might be a material witness, and was the sole participant, other than the accused, in the alleged transaction. *Id.* at 55, 64–65, 77 S.Ct. at 625, 630.

---

1. As we discuss *infra,* the informant's affidavit shows that she was present at the sale and spoke with appellant.

2. Throughout his testimony Graham referred to the informant as "she," as did counsel. Other than those references, there is nothing in the record which indicates that the informant was in fact female.

In *Roviaro,* police officers arranged to have the informant meet a prospective drug seller by having the informant drive to a previously agreed upon location in his own vehicle. After his arrival he was met by Roviaro, who got into the informant's vehicle. A police officer was hidden in the trunk of that vehicle and was able to overhear at least some of the conversation between the informant and Roviaro. In response to Roviaro's instructions the informant drove around in a section of the city and then stopped at a specified location. Roviaro then exited the car and walked to a point where he picked-up a packet. He returned to the car, placed the packet on the seat, and then walked away. These events were observed in part by the police officer in the trunk[3] and by a second officer who followed in another car and watched from a distance. After Roviaro left the scene, the two officers emerged, and one recovered a package from the floor in the front of the informant's vehicle. The package contained heroin, which was the basis for the offenses charged. Both officers testified at trial. The informant was not called as a witness, and the government resisted all efforts to have the informant's identity disclosed.

The Supreme Court, in reversing Roviaro's conviction, rejected a per se rule requiring disclosure when the testimony of the informant *"may* be relevant and helpful to the accused's defense." *Id.* at 62, 77 S.Ct. at 62 (emphasis added). Instead, the Court concluded that, before ordering disclosure, the trial court must apply a balancing test taking into account the facts of the individual case, any possible defense, the significance of the informant's testimony, and any other relevant factors. *Id.* at 62, 77 S.Ct. at 628. It held that, under the circumstances, the trial court erred when it denied Roviaro's request for disclosure. *Id.* at 65, 77 S.Ct. at 630.

The government argues in this case that Judge Burgess properly ruled against disclosure after carefully balancing the government's interest in nondisclosure against appellant's right to prepare a defense. It maintains that appellant's rights were adequately protected by the requirement that the informant respond, under oath, to the written questions. We agree, and hold that under the circumstances, the course of action chosen by Judge Burgess was a proper exercise of discretion and should not be set aside.

At the outset we note there are significant factual differences between the circumstances in this case and what occurred in *Roviaro.* There, the informant was the *only* participant in the transaction. *See id.* at 64, 77 S.Ct. at 629. In this case the actual sale was made to the undercover officer; the informant was primarily an observer.[4]

Moreover, in *Roviaro,* the informant was the only witness to the transaction other than the law enforcement officers. That was not the case here because, in addition to the seller, there were several others present as well as the female who gave entry to the undercover officer and the informant. Appellant's wife testified that she and appellant had once lived at the premises where the offense took place, although she claimed they were not present when the sale occurred. She also testified that she was friendly with the girlfriend of the owner and had visited her at that address on ten to fifteen occasions after she and appellant moved. Appellant sometimes accompanied her on those

---

3. The officer secreted in the trunk used a device that enabled him to open the trunk to see outside.

4. The informant provided the following responses to questions submitted by defense counsel:
Q (# 5) Did you participate in the transaction?
A No, I did not participate in the transaction. I did not receive any drugs nor give any money.
\* \* \* \* \* \*
Q (# 22) Did he [James Sturgess] play any role in the transaction?

A He said what do you want. I said he wanted to buy a twenty. He went in his pocket and pulled it out. We gave him the money, he gave us the drugs.

visits. This continuing connection with the premises and its occupants suggests that the defense had the means to locate potential witnesses. It is significant appellant never represented to the trial court that he could not, or had been unable to, determine the identity of those present. The fact that lay witnesses, other than the accused, were present at the time of the alleged transaction presents a different factual context from that which was present in *Roviaro.*

Further, unlike this case, the informant and Roviaro were alone together in the car for a period of time. No one else was present except for the law enforcement officer in the trunk who heard only some of the conversation. No witness was available, however, who could testify as to everything that transpired, verbal and non-verbal, between the informant and Roviaro. The Supreme Court found that aspect of the transaction to be particularly significant since, in its view, the informant's testimony might have disclosed entrapment, might have caused doubt as to the identity of defendant or the package, or might have raised questions concerning the defendant's knowledge of the contents of the sealed package. *Id.* at 64, 77 S.Ct. at 629. None of those considerations apply to the facts of this case since the informant and the seller were never alone together.

There is, of course, one other crucial difference between this case and *Roviaro.* In *Roviaro* the trial judge was not in a position to strike the balance between the public's interest in the free flow of information to the government and one's right to prepare a defense. The trial court never required the government to make a proffer with respect to what the informant might say about the transaction. No questions prepared by the defense were ever submitted to the informant[5] for response so that the trial judge could assess the nature of the competing interest of the government informant privilege versus the defendant's right to prepare a defense. In this case, however, the motions judge ascertained from the informant's responses to the questionnaire the type of evidence the informant could provide, and was able to weigh that information against the public interest, taking into consideration the crime charged and appellant's defense. *See Roviaro, supra,* at 62, 77 S.Ct. at 628.

There is no directly controlling authority in this court on this issue; however, in two cases we have rejected challenges to the trial court's denial of disclosure when the informant was a virtual eyewitness to the charged offense. In *Savage v. United States,* 313 A.2d 880 (D.C.1974), the informant advised police that he saw a gun in the defendant's waistband only moments before the police recovered the weapon in response to the informant's tip. *Id.* at 882. Similarly, in *Hamilton v. United States,* 395 A.2d 24 (D.C. 1978), the informant's tip regarding the presence of a gun in an automobile led to a seizure of the gun shortly afterwards. *Id.* at 25–26. As in *Savage,* the informant in *Hamilton* observed the weapon in the defendant's possession just before it was seized. In each case, we upheld the trial court's denial of a disclosure request, concluding that the decision to compel disclosure rests within the sound discretion of the trial judge and the burden of demonstrating the need for the information is entirely on the defendant. In *Hamilton,* we concluded that the defendant failed to demonstrate that the "informer would have offered testimony helpful to the defense." *Hamilton, supra,* 395 A.2d at 26–27. *See also United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982) (violation of constitutional right to compulsory process requires showing absent witness would offer testimony material and favorable to defense); *Rugendorf v. United States,* 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964) (no showing that name of informant was necessary to defense).

It is important to note that *Roviaro* did not mandate disclosure in every case where the informant is an eyewitness to the charged offense:

---

5. Indeed, it is not at all clear that the informant in *Roviaro* was even alive at the time of trial. *Id.*

353 U.S. at 60 n. 8, 77 S.Ct. at 627–28 n. 8.

Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, *or is essential to a fair determination of a cause, the privilege must give way.*

*Roviaro, supra,* 353 U.S. at 60–61, 77 S.Ct. at 628 (emphasis added). The *Roviaro* court also observed:

that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defense, the possible significance of the informer's testimony, and other relevant factors.

*Roviaro, supra,* 353 U.S. at 62, 77 S.Ct. at 628–29. We have held that in order to justify disclosure the defendant must demonstrate "that the informer would have offered testimony helpful to the defense." *Hamilton, supra,* 395 A.2d at 26. The informant's identity need not be disclosed unless the information would be "significant in determining guilt or innocence." *United States v. Russotti,* 746 F.2d 945, 950 (2d Cir.1984); *see Scher v. United States,* 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151 (1938) (identity need not be disclosed unless essential to the defense).[6]

In *Valenzuela–Bernal, supra,* the Supreme Court considered the constitutional implications of a prosecutor permitting deportation of aliens who were eyewitnesses to an offense. The deportation occurred before trial thus making the witnesses unavailable to the defense. The Court found no constitutional violation and concluded:

"What *Roviaro* thus makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity," *McCray v. Illinois,*

[386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967)], despite the fact that criminal defendants otherwise have no access to such informers to determine what relevant information they possess. *Roviaro* supports the conclusion that while a defendant who has not had an opportunity to interview a witness may face a difficult task in making a showing of materiality, the task is not an impossible one. In such circumstances it is of course not possible to make any avowal of *how* a witness may testify. But the events to which a witness might testify, and the relevance of those events to the crime charged, may well demonstrate either the presence or absence of the required materiality.

*Valenzuela–Bernal, supra,* 458 U.S. at 871, 102 S.Ct. at 3448. In this case, the trial judge did not permit the defense attorney to interview the witness. He did, however, require the government to submit a questionnaire prepared by the defense to the informant. Under the facts presented, this procedure was an acceptable application of the *Roviaro* balancing test. Courts in other jurisdictions have also devised alternatives to disclosure.

The Washington Supreme Court, in *State v. Harris,* 91 Wash.2d 145, 588 P.2d 720 (1978), was faced with the issue of disclosure of an informant's identity in a drug distribution case where the informant introduced the undercover officer to the seller in an alley where the sale occurred moments later. The seller, his accomplice, the informant, and the undercover officer/buyer were the only people present. The court concluded that disclosure on those facts was not automatic. It held that

The preferred method for [ascertaining whether disclosure of the informant's identity is relevant and helpful to the defense, or essential to a fair determination of the cause] without precluding the rights of either the state or the defendant is for the court to hold an in camera session at which

---

6. In a situation analogous to informant disclosure, we upheld a trial court's denial of a request to disclose the precise location of a hidden observation post in a drug possession case. *Thompson v. United States,* 472 A.2d 899 (D.C.1984). We concluded that in order to obtain disclosure the defendant must establish that the information was necessary to the defense—a showing it was unable to make. *Id.* at 900–01.

the judge hears the informer's testimony and applies the *Roviaro* standard.

*Id.* 588 P.2d at 723.

In *United States v. Doe,* 525 F.2d 878 (5th Cir.1976), the informant introduced the undercover officer to the defendant and was present throughout the transaction. That fact pattern is nearly identical to what occurred in this case except that here the informant led the officer to the premises but did not introduce the officer to the seller. And in *Doe,* as is the case here, the defense was alibi and misidentification. *Id.* at 879. The trial court conducted an *in camera* interview of the informant and concluded the informant could positively identify the defendant and that the informant's testimony would not benefit the defendant. *Id.* at 880. The appellate court affirmed the trial court's denial of the disclosure request and concluded "an *in camera* proceeding can be an appropriate device to aid the court in striking the *Roviaro* balance." *Id.*

We have upheld a similar procedure, as an alternative to disclosure, in a case where the informant observed the charged offense minutes before the defendant was arrested. *Savage, supra,* 313 A.2d at 884. Savage was arrested based upon the informant's tip, and convicted of carrying a pistol without a license. The pistol was recovered from Savage's person. At trial, Savage testified that he had received the pistol from someone whose name he thought was Lawrence Smith. One of the defense theories was that Smith was the informant whose tip had led to the arrest. Savage reasoned that if the informant was the person who had given him the pistol, a defense of entrapment would lie. The trial court, after receiving *in camera* representations from government counsel, concluded that Smith and the informant were not the same person. Accordingly, the court denied the defense request for disclosure of the informant. *Id.* at 882. We affirmed the trial court after reviewing the *in camera* record, which had been sealed, concluding

that it established that no entrapment issue existed. *Id.* at 883 n. 5, 884.

There was no *in camera* inquiry in this case; however, none was ever requested.[7] Instead, the trial court permitted inquiry of the informant by submission of written questions to be answered under oath. We are satisfied that this procedure, under the circumstances presented here, was an adequate substitute for the *in camera* inquiry approved in *Harris, Doe,* and *Savage.* In short, we hold that under the circumstances presented here, requiring the informant to respond, under oath, to written questions submitted by the defense, was "an appropriate device to aid the court in striking the *Roviaro* balance." *Doe, supra,* 525 F.2d at 880.

Finally, we note that the Second Circuit has both denied disclosure and not required inquiry of the informant (either *in camera,* by written questionnaire for response under oath, or by any other means) when the identification evidence is strong. *United States v. Soles,* 482 F.2d 105 (2d Cir.1973). In *Soles,* the informant introduced the undercover officer to the seller and accompanied the two to the seller's home, where the informant remained until just before the actual sale. The court affirmed the trial court's denial of a request for disclosure largely because the identification evidence was strong. *Id.* at 109; *accord, United States v. Russ,* 362 F.2d 843 (2d Cir.), *cert. denied,* 385 U.S. 923, 87 S.Ct. 236, 17 L.Ed.2d 146 (1966).

■ In this case, the identification evidence was also strong. The undercover officer had a significant opportunity to observe the seller in a well-lighted living room while awaiting the sale to the other customers and during the sale to himself. Moreover, appellant was arrested inside the premises where the sale took place, two days later, when the warrant was executed. Finally, there was testimony from appellant's wife that appellant had a continuing connection to the premises after she and appellant had moved away. Under these circumstances, the course taken

---

7.  At one point in the course of the motions hearing the prosecutor offered to arrange an *in camera* meeting between the trial judge and the informant. That offer was not discussed further by any of the participants, apparently because defense counsel insisted that he was entitled to question the informant in person.

62

by the trial judge, in requiring the submission of sworn answers to defense counsel questions, was an appropriate exercise of discretion.

■ Appellant maintains, however, that the informant's testimony might have been helpful to the defense or might have thrown doubt upon the identification of appellant as the seller. In light of the informant's responses to the written questions that contention is entirely speculative. We agree with the motions judge that the most the defense could expect from the informant's testimony would be some minor inconsistencies with the testimony of the agent. That is normally not a sufficient basis by itself for requiring disclosure. *See United States v. Russotti, supra*, 746 F.2d at 950; *Soles, supra*, 482 F.2d at 109–10. Moreover, any value in impeachment would be overwhelmingly offset by the reasonably anticipated testimony of the informant identifying appellant as the seller[8]— testimony which would corroborate that of the undercover officer on the only contested issue in the case.

■ In sum, we conclude that *Roviaro* does not compel disclosure of the informant's identity in this case. *Roviaro* does require, when disclosure is sought, that the trial judge carefully balance the government's interest in nondisclosure with the defendant's right to prepare a defense. *See United States v. Guitierrez*, 931 F.2d 1482, 1490 (11th Cir.1991) (the three major factors to consider in applying the *Roviaro* balancing test are: "the extent of the informant's participation in the criminal activity, the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and the government's interest in nondisclosure") (internal quotations and citations omitted). We are satisfied that Judge Burgess adequately protected appellant's interest by crafting the creative alternative to disclosure devised here. In another case, under different circumstances, the solution adopted might not be sufficient to protect the defendant's rights. On the other hand, under other circumstances, a questionnaire for the informant might be so intrusive that it would likely result in disclosure of the witness's identity. Other possible methods of dealing with the problem include *in camera* inquiry of the informant, government counsel, and/or law enforcement officers. In still other cases, disclosure may be the only way the defendant's rights can be protected. Those are judgments best left to the discretion of the trial judge. *See Johnson v. United States*, 398 A.2d 354, 361–62 (D.C.1979). We conclude that, in this case, the motions judge's resolution of this issue was an appropriate way to balance the competing interests of the government and the defense. Accordingly, we hold that the motions judge did not err in denying disclosure of the informant's identity.

*Affirmed.*

8. In response to the questionnaire, the informant noted that she observed the seller and the sale, and that the person in the photograph (appellant) was the seller. The informant was 100% certain appellant was the seller, that the seller was someone the informant had seen on ten or more occasions since 1988 (the affidavit was executed in October 1990), and that the informant had seen appellant at the same premises before. The informant also observed that "[Appellant] and his wife would just sell the drugs and go."